IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DARRYL A. PARKER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CV-546-WKW |
| | ) | [WO] |
| TERESA R. JACOBS, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

Darryl A. Parker appeals the United States Bankruptcy Court for the Middle District of Alabama's Order denying his motion to vacate, entered on June 2, 2011, and the Order entered on April 8, 2011, disbarring Mr. Parker from the practice of law in this district's bankruptcy court. The appeal is brought pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001(b). Having considered the parties' briefs, the relevant law and the record as designated, the court finds that the bankruptcy court's orders are due to be affirmed.

## I. JURISDICTION AND VENUE

Appellate jurisdiction of the district court to hear this appeal is exercised pursuant to 28 U.S.C. § 158(a). Venue is proper because an appeal "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." § 158.

## II.  STANDARD OF REVIEW

Decisions regarding the imposition of sanctions are reviewed for an abuse of discretion.  *In re Walker*, 532 F.3d 1304, 1308 (11th Cir. 2008).  Applying this standard, a reviewing court "'must affirm unless [it] find[s] that the [lower] court has made a clear error of judgment, or has applied the wrong legal standard.'"  *Amlong & Amlong, P.A. v. Denny's, Inc.* 500 F.3d 1230, 1238 (11th Cir. 2007) (quoting *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc)).  The reviewing court also "may affirm on any legal ground supported by the record."  *In re Walker*, 532 F.3d at 1308.

## III.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Parker, the appellant, is an attorney licensed to practice law in the state of Alabama, and represents debtors in Chapters 7 and 13 proceedings in the United States Bankruptcy Court for the Middle District of Alabama.  Teresa Jacobs, the appellee, is the bankruptcy administrator for the United States Bankruptcy Court for the Middle District of Alabama, whose duties include "seek[ing] to prevent, through monitoring and reporting, abuses in the bankruptcy system."  U.S. Bankr. Admin., M.D. Ala., http://www. almba.uscourts.gov. (last visited on Jan. 26, 2012).

On February 17, 2011, Ms. Jacobs initiated a miscellaneous proceeding in the bankruptcy court for sanctions against Mr. Parker, alleging multiple violations of

Federal Rule of Bankruptcy Procedure 9011(b)(3) and 11 U.S.C. § 526(a)(2). *In re Darryl A. Parker*, Misc. Case No. 11-301-WRS (Bankr. M.D. Ala. Feb. 17, 2011) (Doc. # 1-1) (henceforth "Mot. Sanctions"). The Orders from which Mr. Parker now appeals evolve from this miscellaneous proceeding.[1]

The misconduct for which Ms. Jacobs sought sanctions did not arise from a single case, but rather from multiple cases in which Mr. Parker was involved. Ms. Jacobs outlined a plethora of alleged § 9011(b)(3) and § 526(a)(2) infractions by Mr. Parker. She cited six Chapter 7 petitions filed by Mr. Parker where he had made false statements pertaining to the debtor's county of residence. She also referenced twenty-eight cases in which Mr. Parker, as the debtors' attorney, failed to pay timely the filing fee mandated by Federal Rule of Bankruptcy Procedure 1006 and 28 U.S.C. § 1930, and pointed out that, in many of those instances, the clients already had paid Mr. Parker the required fee.

As further support for the motion for sanctions, Ms. Jacobs highlighted Mr. Parker's own *pro se* Chapter 7 proceeding, which she argued was replete with false statements and incomplete disclosures. Citing the Alabama Rules of Professional Conduct, Ms. Jacobs argued that Mr. Parker's transgressions were "indicative of a

---

[1] The bankruptcy judge presiding over this miscellaneous proceeding was Judge William R. Sawyer.

lack of the requisite, diligence, knowledge and skill necessary for [Mr.] Parker to competently represent clients in bankruptcy." (Mot. Sanctions 4 (citing Ala. Rules of Prof'l Conduct R. 1.1 & R. 1.3).)  She sought "appropriate sanctions . . . sufficient to deter repetition and continuation of such conduct."  (Mot. Sanctions 4.)

The bankruptcy judge scheduled a hearing on the motion for sanctions for April 7, 2011, and provided notice to Mr. Parker, electronically to two e-mail addresses that Mr. Parker had listed with the bankruptcy court and by first-class mail to his office address.  Mr. Parker did not appear for the hearing or file a response to the motion for sanctions.  He also failed to notify the bankruptcy judge prior to the hearing that he would be absent.  Mr. Parker's failure to appear for the April 7, 2011 hearing was consistent with his past behavior:  As noted by the bankruptcy judge, Mr. Parker was "frequently a no-show at hearings," and, when Mr. Parker did attend, he was "habitually . . . late and unprepared."  (H'rg Tr. 2, April 7, 2011 (Doc. # 10-1); Order 2, April 8, 2011 (Doc. # 1–2).)

At the April 7, 2011 hearing, at which Ms. Jacobs appeared through her counsel, the bankruptcy judge summarized Mr. Parker's violations: Mr. Parker "willfully . . . hold[s] off on paying filing fees"; he does not "observe . . . normal courtroom decorum"; he has made a "series of material omissions" and falsehoods in cases; and in one case, in particular, he "covered up one set of lies with another set of

lies, and then a third set of lies, all quite willful."  (H'rg Tr. 8, April 7, 2011.)  The bankruptcy judge concluded:  Mr. Parker is "not a good detail man," but even worse, he is "a dishonest, unethical lawyer [who] harms his clients, and [who] files false pleadings and false statements in Bankruptcy Court."  (H'rg Tr. 11, April 7, 2011.)  The bankruptcy judge orally pronounced the sanction:  He would "disbar . . . [Mr. Parker] from practicing in bankruptcy court from this point forward and remove him as counsel of record" on his pending cases.  (H'rg Tr. 9, 14, April 7, 2011.)

The bankruptcy judge followed through in a written order entered the next day on April 8, 2011.  He reiterated the "numerous instances" where Mr. Parker "knowingly fil[ed] false statements with the Court," including in his own Chapter 7 petition, and "fail[ed] to timely pay filing fees."  (Order 4, April 8, 2011.)  He found that, in his own Chapter 7 case, Mr. Parker went so far to avoid creditor detection that, in his petition, he transposed his first and middle names ("Avon D. Parker" instead of "Darryl A. Parker") and listed his city of residence as Auburn, Alabama, when in fact he lived in Montgomery, Alabama.  The bankruptcy judge also referenced a Chapter 7 petition filed by Mr. Parker on behalf of a debtor ("the Porterfield case"), where he "knowingly and intentionally filed false schedules . . . with the intent to defraud creditors" by reporting that the debtor was single and did not own any real property. (Order 2, April 8, 2011.)  The bad faith conduct in the Porterfield case did not end

there.  When the false statements were brought to light by the trustee in an adversary proceeding, Mr. Parker sought to dismiss Mr. Porterfield's Chapter 7 bankruptcy case, which the bankruptcy court found was a violation of Rule 9011 and an attempt to make an "end run" around the trustee's adversary proceeding against him.  In the Porterfield case, after a hearing, Judge Sawyer entered an order, enjoining Mr. Parker "from filing any bankruptcy cases under any Chapter of the Bankruptcy Code, in any bankruptcy court in the United States, for a period of 120 days," effective February 28, 2011.[2]  (Order 1, Porterfield case (Doc. # 8-15).)

Repetitive filing fee infractions also were enumerated by the bankruptcy judge. The bankruptcy judge relied upon the numerous petitions "where [Mr.] Parker ha[d] violated rules concerning the payment of filing fees," as outlined in Ms. Jacobs's motion for sanctions.  (Order 5, April 8, 2011.)  He also cited a case ("the Richardson case") where he had reprimanded Mr. Parker for "a well established practice of his playing fast and loose with the Court and with his client's money" by taking advantage of the bankruptcy court's electronic filing system, which to permit attorneys to make a single payment at the end of the day for all petitions filed in a single day, "is configured to allow the filing of a petition without immediate

---

[2] The temporary suspension, ending on or about June 27, 2011, prohibited only new filings by Mr. Parker.  The bankruptcy court directed Mr. Parker to "continue to represent his clients in cases filed prior to the effective date of the injunction."  (Order 1, Porterfield Case.)

payment." (Order 3, Richardson Case (Doc. # 8-20).)  Although Mr. Parker was ordered in that case to refund his client's money and forward proof of the same within ten days, the bankruptcy judge noted in his April 8, 2011 Order that "[t]o date, [Mr.] Parker has not complied with the Court's order" in the Richardson case.  (Order 4, April 8, 2011.)

After reviewing the totality of Mr. Parker's conduct across the spectrum of cases in which Mr. Parker had appeared, the bankruptcy judge concluded that Mr. Parker "ha[d] made a practice of misappropriating client funds and intentionally making false statements in his own and his clients' bankruptcy petitions." (Order 5, April 8, 2011.) Consequently, the bankruptcy judge "disbarred [Mr. Parker] from the practice of law in the United States Bankruptcy Court for the Middle District of Alabama," reasoning that because the "violations of attorney ethics" by Mr. Parker were "so widespread," the "only appropriate sanction [was] disbarment."[3] (Order 5, April 8, 2011.)

On April 14, 2011, Mr. Parker filed a motion to vacate the Order of disbarment. He contended that he missed the hearing "for good cause" because on that date he

---

[3] The bankruptcy judge also ordered the Chapter 13 Trustee "to cease all further distributions of attorney's fees to [Mr.] Parker until further order of this Court," and ordered Ms. Jacobs "to use her best efforts to identify any pending bankruptcy cases in which Parker is counsel and take all reasonable action to protect the rights of former clients of Parker." (Order 6, April 8, 2011.)  On appeal, Mr. Parker does not contest the imposition of these two sanctions.

"was suffering from influenza, [f]ever, and other symptoms commiserate with this illness" and, as a sole practitioner, had nobody else to send in his place.  (Mot. Vacate 1 (Doc. # 1–3).)  He submitted a doctor's note indicating that on April 8, 2011, the nursing staff identified "flu-like symptoms."  (Mot. Vacate, Ex. 1.)

The bankruptcy judge held a hearing on Mr. Parker's motion to vacate on June 1, 2011.  Mr. Parker showed up for this one.  He admitted that he "was in over [his] head with bankruptcy," and that he had "no intentions of ever trying to practice bankruptcy" again.[4]  (H'rg Tr. 5–6, June 1, 2011 (Doc. # 1-2).)  He requested, however, that the "disbarment be revoked" as too "extreme under the circumstances." (H'rg Tr. 7, June 1, 2011.)  Although given the opportunity, he made no other substantive challenges to the bankruptcy judge's April 8, 2011 Order.

Rejecting Mr. Parker's argument that the sanction was too harsh, the bankruptcy judge reasoned that Mr. Parker had committed "just too many errors." (H'rg Tr. 9, June 1, 2011.)  In addition to competency and practice issues, there were intentional errors, including "willful filing of false schedules" and "conceal[ment] of assets" in the Porterfield case, and improper management of trust funds in the Richardson case (which appeared to amount to a "conversion of trust funds").  (H'rg

---

[4] For instance, Mr. Parker stated that he had been unaware until recently of the significant changes to bankruptcy law that occurred in 2005 as a result of the Bankruptcy Abuse Prevention and Consumer Protection Act.  (H'rg Tr. 6, June 1, 2011.)

Tr. 9, June 1, 2011.)  The bankruptcy judge further noted Mr. Parker's misconduct in his own Chapter 7 proceedings:  "[T]here was the slight of hand, the changing of the name, the indication of an Opelika address rather than a Montgomery address." (H'rg Tr. 9, June 1, 2011.)  In an Order entered on June 2, 2011, the bankruptcy judge denied Mr. Parker's motion to vacate "for the reasons set forth on the record on June 1, 2011." (Order Denying Mot. Vacate (Doc. # 1–4).)  This appeal followed.

## IV.  DISCUSSION

Mr. Parker's appeal focuses on the bankruptcy judge's sanction permanently disbarring him from practicing law in the United States Bankruptcy Court for the Middle District of Alabama.  Although Mr. Parker's arguments are disjointed and difficult to decipher, the court has done its best to discern his principal contentions. Before tackling Mr. Parker's arguments, the court sets forth the legal standard that governs the bankruptcy judge's imposition of sanctions.

**A.    The Source of the Bankruptcy Court's Authority to Sanction Mr. Parker**

The appropriateness of imposing sanctions "depends to some degree upon the statutory basis for their award, including the scope of the court's authority under the statute." *Campos v. City of Naples*, 202 F. App'x 381, 386 (11th Cir. 2006).  The April 8, 2011 Order did not recite the authority the bankruptcy judge was acting upon when he sanctioned Mr. Parker.  Ms. Jacobs's motion for sanctions was grounded,

9

however, on two sources, Rule 9011(c)(2) and § 526(a)(5), and it is clear that the

bankruptcy judge was acting upon Ms. Jacobs's motion for sanctions when he ruled.

(*See* Order 1, April 8, 2011.)   As discussed below, the bankruptcy judge made

adequate findings to support the imposition of sanctions pursuant to Rule 9011(c)(2)

and § 526(a)(5) and, alternatively, pursuant to his inherent authority.

### 1.    *Rule 9011(b)(3)*

Rule 9011(b)(3) provides that, by filing "a petition, pleading, written motion

or other paper" with the bankruptcy court, the attorney "is certifying that to the best

of [his or her] knowledge, information and belief, formed after an inquiry reasonable

under the circumstances, . . . the allegations and other factual contentions have

evidentiary support." *Id.*   Violations of Rule 9011(b) are punishable by sanctions,

pursuant to Federal Rule of Bankruptcy Procedure 9011(c).   Rule 9011(c)(2) provides

that the sanction for a violation of Rule 9011(b)(3) "is limited to what is sufficient to

deter repetition of such conduct," and may consist of "directives of nonmonetary

nature." *Id.*   At the same time, a bankruptcy court imposing sanctions pursuant to

Rule 9011 "has wide discretion" to determine what is an appropriate sanction. *See In*

*re Brooks-Hamilton*, 400 B.R. 238, 283 (B.A.P. 9th Cir. 2009).

### 2.    Section 526(a)(2)

Section 526(a)(2) prohibits a debtor's attorney (who statutorily is a "debt relief agency") from making

> any statement, or counsel[ing] or advis[ing] any assisted person . . . to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by [the debtor's attorney] to be untrue or misleading.

11 U.S.C. § 526(a)(2).   Violations of § 526(a)(2) are sanctionable, pursuant to § 526(a)(5), which permits a bankruptcy court to "impose an appropriate civil penalty" against an attorney who it finds intentionally violated § 526(a)(2).

### 3.    Inherent Authority

Bankruptcy courts, like Article III courts, have inherent power to impose sanctions against attorneys for misconduct.  *See In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009); *see also* 11 U.S.C. § 105(a) (establishing the parameters of a bankruptcy court's powers, to include "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process").  Attorneys who practice before the United States Bankruptcy Court for the Middle District of Alabama must abide by the Alabama Rules of Professional Conduct.  *See* Bankr. M.D. Ala. L.R. 2090-1(a) (incorporating by reference M.D. Ala. L.R. 83.1).  Mr. Parker is subject to sanctions, therefore, for

violations of these rules.  *See In re Finkelstein*, 901 F.2d 1560, 1564 (11th Cir. 1990)
(Although "[t]he state codes of professional responsibility do not by their own terms
apply to sanctions in the federal courts and any standards imposed are a matter of
federal law[,] . . . [t]he sanctioning court must . . . hold attorneys accountable to
recognized standards of professional conduct.").

A court's inherent power "can be invoked even if procedural rules exist which
sanction the same conduct, for these rules are not substitutes for the inherent power."
*In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (holding that "[t]he fact that rules
such as Rule 11 and Bankruptcy Rule 9011 have been promulgated by Congress does
not displace a court's inherent power to impose sanctions for a part[y's] bad faith
conduct").  "This power is derived from the court's need to manage [its] own affairs
so as to achieve the orderly and expeditious disposition of cases."  *In re Sunshine Jr.*
*Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006) (alteration in original) (quotation
marks omitted).  A court's "'inherent power extends to a full range of litigation
abuses' and 'must continue to exist to fill in the interstices.'"  *Peer v. Lewis*, 606 F.3d
1306, 1314 (11th Cir. 2010) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46
(1991)).  In the latter sense, the court's inherent power is broader than the statutory-
and rule-based methods for imposing sanctions.  *See id.*  It is narrower, however, in
that bad faith must support sanctions imposed pursuant to a court's inherent authority.

*See id.* "A party . . . demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *In re Sunshine Jr. Stores, Inc.*, 456 F.3d at 1304 (citation and internal quotation marks omitted).

## B.  Whether the Bankruptcy Court Abused Its Discretion in Permanently Disbarring Mr. Parker from the Practice of Law in the United States Bankruptcy Court for the Middle District of Alabama

There is ample authority that a bankruptcy court has power to disbar an attorney from the practice of law in the bankruptcy court in its district for violations of Rule 9011 and § 526(a)(5).[5] *See In re Nguyen*, 447 B.R. 268, 281 (B.A.P. 9th Cir. 2011) ("Bankruptcy courts . . . have express authority under the Code and the Rules to sanction attorneys, including disbarment or suspension from practice."); *In re Brooks-Hamilton*, 400 B.R. 238, 249–50 (B.A.P. 9th Cir. 2009) ("The bankruptcy court unquestionably had authority under Rule 9011 to impose a district-wide suspension sanction against Smyth."). Additionally, it is well recognized that a court has "inherent authority to suspend or disbar lawyers." *In re Snyder*, 472 U.S. 634, 643

---

[5] Disbarment generally is regarded as a civil penalty. *See Ex parte Wall*, 107 U.S. 265, 288 (1883) ("The [disbarment] proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practise in them."); *In re Sacher*, 206 F.2d 358, 360 (2d Cir. 1953) ("The purpose of striking an attorney from the rolls of a court is not to punish him but to protect the court itself and relieve the public of a member of the legal profession, who is unfit to serve as such, in order to maintain the respect due the court by insuring that attorneys, who are 'officers of the court,' are of good professional character."), *reversed on other grounds*, 347 U.S. 388 (1954).

(1995); *see also In re Evergreen*, 570 F.3d at 1280 (affirming bankruptcy court's five-year suspension of an attorney and his firm from practicing before the bankruptcy court); *In re Evans*, 801 F.2d 703, 706 (4th Cir. 1986) ("A court has the inherent authority to disbar or suspend lawyers from practice . . . derived from the lawyer's role as an officer of the court."); *In re MPM Enters.* 231 B.R. 500, 504 (Bankr. E.D.N.Y. 1999) (finding that it had inherent power "to permanently bar an attorney from appearing in any Bankruptcy Court in the Eastern District").

Based upon the foregoing authority, a bankruptcy court has power under Rule 9011, § 526(a)(2) and its inherent authority to impose a permanent district-wide disbarment sanction. Having established the bankruptcy court's general authority, the court turns to Mr. Parker's arguments that the bankruptcy judge abused his discretion in determining that permanent disbarment from the practice of law in the United States Bankruptcy Court for the Middle District of Alabama was an appropriate sanction.

Mr. Parker contends that the bankruptcy judge abused his discretion in sanctioning him because his failure to attend the April 7, 2011 hearing for a "documented illness" provides insufficient grounds "for [d]isbarment of an attorney from the practice of law in a jurisdiction." (Appellant's Br. 8 (Doc. # 2).) He contends that the bankruptcy judge refused to consider that he was "legitimately absent from the hearing due to illness" and that other attorneys have failed to appear

before the bankruptcy judge for a scheduled hearing and have not been disbarred. (Appellant's Br. 8.)  Implicitly woven through this written argument on appeal is his oral argument raised below that the sanction of disbarment is too "extreme under the circumstances." (H'rg Tr. 7, June 1, 2011.)  Mr. Parker's argument misses the point.

It is true that Mr. Parker's failure to attend the April 7, 2011 hearing factored into the bankruptcy judge's decision to sanction him.   It also is true that the bankruptcy judge was "dismay[ed]" by Mr. Parker's absence.  (H'rg Tr. 2, April 7, 2011.)  Contrary to Mr. Parker's assertion, however, there was more, much more.  As to the bankruptcy judge's refusal to reopen the hearing on the motion for sanctions, the bankruptcy judge was not as troubled with the merits of the excuse Mr. Parker offered as he was with Mr. Parker's lack of professional courtesy.  The bankruptcy judge stated that, even if he "accept[ed] the proposition that [Mr. Parker] could not attend the April 7 hearing" due to an illness documented in a "fairly vague" doctor's letter, "there still [was] no excuse for [Mr. Parker] not calling." (H'rg Tr. 8, June 1, 2011.)  At the June 1, 2011 hearing, Mr. Parker offered no reason why he did not let the bankruptcy court know prior to the hearing that he would be unable to attend or why he waited six days after the entry of the Order disbarring him to defend his absence at the hearing.[6]  Additionally, the bankruptcy judge's sanction and his refusal

_____

[6] Mr. Parker does not dispute that he received notice of the hearing and an opportunity to be heard on Ms. Jacobs's motion for sanctions.  He also does not dispute that, prior to the

to vacate the sanction were predicated, not only upon Mr. Parker's unexplained absence from the April 7, 2011 hearing, but also upon the "combination" of Mr. Parker's failure to provide any "adequate reasons" as to why he should be permitted to continue practicing before the bankruptcy court and the totality of his transgressions committed in all of his cases. (Hr'g Tr. 9, June 1, 2011.) The record amply supports the bankruptcy court's holistic determination that disbarment was the only appropriate and deterrent sanction based upon Mr. Parker's extensive misconduct.

To begin with, the bankruptcy judge found that Mr. Parker "habitually c[ame] to Court late and unprepared" and many times "d[id] not attend scheduled hearings at all." (Order 2, April 8, 2011.) This factual finding was not challenged by Mr. Parker, either below or on appeal.[7] The bankruptcy judge also grounded his sanctions decision on numerous instances where Mr. Parker had filed petitions and other papers in the United States Bankruptcy Court for the Middle District of Alabama, knowing that they contained false information, in violation of Rule 9011(b)(3) and § 526(a)(2). Particularly egregious was Mr. Parker's fraudulent conduct in his own Chapter 7 proceeding, where he falsified his own name and home address to avoid creditor

hearing, he failed to inform the bankruptcy court that he would be unable to attend the hearing due to illness.

[7] In fact, at the June 1, 2011 hearing held on his motion to vacate, Mr. Parker did not challenge any of the bankruptcy court's factual findings detailed in the April 8, 2011 Order. The consequences of that failure are discussed more below.

detection.  As aptly noted by the bankruptcy judge, "[r]egardless of [Mr.] Parker's level of competence, he certainly knows how to spell his name and where he lives." (Order 5, April 8, 2011.)  The bankruptcy judge also relied upon other cases in which Mr. Parker had filed Chapter 7 cases on behalf of debtors and included false information about the debtor's county of residence, as well as upon twenty-eight cases where Mr. Parker did not include a filing fee with the petition, as required by Rule 1006.  (Order 4, April 8, 2011.)

The bankruptcy judge also was personally familiar with Mr. Parker's past misconduct.  As one of two bankruptcy judges in this district, he had presided over many of the approximately forty-three cases filed by Mr. Parker, including the Porterfield case in which Mr. Parker attempted to "defraud creditors" through fraudulent misrepresentations about the debtor's marital status and ownership of real property, and then sought to dismiss the debtor's case when his deceit was uncovered. (Order 2, April 8, 2011.)

These instances amply illustrate the repeated, intentional, material misrepresentations and filing fee infractions that were at the core of the bankruptcy judge's finding that the severe sanction of disbarment was appropriate.  The knowing false statements, filed for fraudulent purposes, are indicative of bad faith and support the bankruptcy judge's finding that Mr. Parker lacked "competence and [a] sense of

ethics."  (Order 2, April 8, 2011.)  The record also demonstrates violations of the Alabama Rules of Professional Conduct, in particular Rule 1.1.  *See* Ala. Rules of Prof'l Conduct R. 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.").  In short, Mr. Parker's assertion that he was disbarred permanently from practicing law in the bankruptcy court of this district based upon a single incident of failing to appear for a scheduled hearing is unfounded.[8]

Mr. Parker appeared time and time again in front of the sanctioning bankruptcy judge, making him the one in the best position to decide an appropriate sanction.  *See In re Evans*, 801 F.2d at 706 ("'[N]o other tribunal can decide, in a case of removal from the bar, with the same means of information as the [sanctioning] Court itself.'" (quoting *Ex parte Burr*, 22 U.S. 529, 530 (1824)).  The bankruptcy judge was confronted with repeated misconduct, ranging in severity from dilatory to bad faith and occurring over a span of at least two years, that pervaded the vast majority of cases in which Mr. Parker had made appearances on behalf of debtors in the United States Bankruptcy Court for the Middle District of Alabama.  The bankruptcy judge, concerned for some time about Mr. Parker's misconduct, also was faced with the fact

---

[8] For this reason, Mr. Parker's argument that he was disbarred for missing a hearing when other attorneys who missed hearings were not disbarred lacks any relevance or persuasiveness.

that merely a month after he had temporarily suspended Mr. Parker from filing any bankruptcy cases, Mr. Parker, with no advance notification, did not appear at the scheduled April 7, 2011 hearing to defend against Ms. Jacobs's motion for sanctions. On this record and considering the misconduct in its totality, the bankruptcy judge did not abuse his discretion in permanently disbarring Mr. Parker from the practice of law in this district's bankruptcy court. Mr. Parker's concession as to his incompetence in the area of bankruptcy law and his proclamation that he "ha[s] no intentions of ever trying to practice bankruptcy" (H'rg Tr. 6, June 1, 2011) further demonstrate that a permanent suspension from practice in the bankruptcy court in this district is not too severe.[9]

Nonetheless, Mr. Parker contends that the bankruptcy court abused its discretion in imposing the disbarment sanction because it (1) "accepted as truth many assertions made by [Ms. Jacobs,] which were unfounded or patently false" and (2) improperly punished him twice for the same conduct by considering the evidence

---

[9] In the statement of facts in his brief, Mr. Parker states, without elaboration, that the bankruptcy judge's sanction of disbarment "also mean[s] that [he] [is] prevented from the practice of . . . law in any jurisdiction due to reciprocal discipline under Alabama Rules of Disciplinary Procedure." (Appellant's Br. 1 (presumably referencing Ala. Rules of Disciplinary Procedure R.2(c)).) Neither this court nor the bankruptcy court, however, has any control over whether state disciplinary authorities impose reciprocal discipline based upon Mr. Parker's misconduct outlined in the bankruptcy judge's April 8, 2011 Order. Mr. Parker also cites no authority, and the court is aware of none, that the potential for reciprocal discipline is a factor a court should consider in fashioning an appropriate sanction.

in the Porterfield case when deciding that permanent disbarment was the proper sanction.  (Appellant's Br. 9, 10–11.)

Mr. Parker has waived these two arguments on appeal because he did not raise them below "at all."  *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1170 (11th Cir. 2004); *see also Formby v. Farmers & Merchants Bank*, 904 F.2d 627, 634 (11th Cir. 1990) ("As a general rule, an appellate court will not consider a legal issue or theory raised for the first time on appeal." (citation and internal quotation marks omitted)).  At the June 1, 2011 hearing on Mr. Parker's motion to vacate, the bankruptcy judge gave Mr. Parker an opportunity to address the substance of the April 8, 2011 Order and to present any arguments he would have made had he been present at the hearing on April 7, 2011.  (Hr'g Tr. 5, June 1, 2011.) To his credit, Mr. Parker did not continue to make excuses for his failure to attend the April 7, 2011 hearing or for his prior acts of misconduct.  Rather, his response to the bankruptcy judge's inquiry was that he would have "withdraw[n] any defense and accept[ed] punishment."  (H'rg Tr. 5, June 1, 2011.)  With that said, however, Mr. Parker's only substantive objection to the bankruptcy judge's April 8, 2011 Order was that he believed that the sanction of permanent disbarment was too harsh.  (H'rg Tr. 7, June 1, 2011.)  He did not take issue with any other finding made in the April 8, 2011 Order.

Even if Mr. Parker's arguments had not been waived, they lack merit.  It is true that a bankruptcy court "would necessarily abuse its discretion if it based its ruling on . . . a clearly erroneous assessment of the evidence," *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995), but that is not the situation here.  Briefly, as to Mr. Parker's specific factual attacks, he argues that Ms. Jacobs falsely argued that Mr. Parker had been practicing law in the bankruptcy court since 2005; however, contrary to Mr. Parker's assertion, the bankruptcy judge did not adopt that fact.  (*See* Order 2, April 8, 2011 (reciting that Mr. Parker "has been practicing law in this Court for more than two years and has filed dozens of cases").)  Moreover, the evidence of a "high rate of [a]mendments" made in Mr. Parker's cases amplified the number of cases in which Mr. Parker initially falsified the debtors' counties of residence.  (Order 2, April 8, 2011.)  That evidence was material to the misconduct relied upon by the bankruptcy judge in sanctioning Mr. Parker.  Evidence that a lawyer has knowingly made false statements in petitions and other papers for fraudulent purposes *is* evidence of incompetence.  Mr. Parker's competence was squarely at issue, and Mr. Parker's contrary argument is rejected.

Continuing his attack on the evidence, Mr. Parker contends that the bankruptcy judge abused his discretion in finding that he (Mr. Parker) "had mishandled client funds."  (Appellant's Br. 9.)  The governing rules require that payment of the full

filing fee (or, as prescribed, payment of a partial filing fee) must be made contemporaneously with the filing of a bankruptcy petition. *See* 28 U.S.C. § 1930; Fed. R. Bankr. P. 1006. Mr. Parker does not dispute, as documented in Ms. Jacobs's motion for sanctions, that in some cases although he had represented in his Rule 2016(b) disclosure that full or partial filing fees had been paid up-front by the debtors, he did not pay the appropriate filing fee when he filed the debtors' petitions. He also does not dispute that he paid filing fees late in the twenty-eight cases listed by Ms. Jacobs in her motion for sanctions. (Mot. Sanctions, Ex. 1.) Mr. Parker argues now, however, that he committed no wrongdoing because he simply was "unable to get the fees to the Court" because his automobile was inoperable and needed repairs. (*See* Appellant's Br. 9–10.) He provides no citation to the record, and, from aught that appears, that was not an excuse he made to the bankruptcy court at any time. (*See, e.g.*, Order 2, Richardson Case (observing that Mr. Parker "advised that he intended to pay the [filing] fee with a money order, but that he did not have time to come down to Court and pay the fee prior to dismissal").) The bankruptcy judge did not abuse his discretion in refusing to excuse Mr. Parker's persistent filing fee violations. As aptly noted by the bankruptcy judge in the Porterfield case, "[t]here is no good excuse for the failure to pay filing fees as the lawyer collects the fees from his client." (Order 2, Richardson Case.)

Finally, Mr. Parker cites no authority for his argument that, because he was subjected to a temporary suspension sanction in the Porterfield case, the bankruptcy judge could not weigh that misconduct in fashioning the present permanent disbarment sanction.  Mr. Parker's argument sounds in double jeopardy, but, in sufficiently analogous circumstances, the Eighth Circuit held that disbarment did not violate the Double Jeopardy Clause, even though based on the same conduct that resulted in prior sanctions under Rule 11 of the Federal Rules of Civil Procedure.  *See Matter of Caranchini*, 160 F.3d 420, 423 (8th Cir. 1998) ("[W]e find that attorney discipline, including sanctions and disbarment, is not 'punishment' for purposes of the Double Jeopardy Clause.").  Moreover, the bankruptcy court found that the misconduct in the Porterfield case was part of a larger pattern of sanctionable conduct that had not yet been addressed.  The bankruptcy court did not abuse its discretion in imposing a more severe sanction that covered the totality of the misconduct.  *Cf. In re Jaffe*, 585 F.3d 118, 121 (2d Cir. 2009) ("[E]ven if an attorney already has received from this Court a final sanction for each of several instances of misconduct, we may nonetheless impose further discipline if the individual instances of misconduct are found to be part of a sanctionable pattern that has not itself been addressed.").

## V.  CONCLUSION

Although permanent disbarment from practicing law in the United States Bankruptcy Court in the Middle District of Alabama is a harsh sanction, the

bankruptcy judge acted well within his discretion to impose this sanction. The bankruptcy judge did not abuse his discretion in finding that Mr. Parker repeatedly violated Rule 9011(b)(3) and § 526(a)(2) by filing materially false petitions and schedules and that he repeatedly withheld payment of filing fees, in violation of Rule 1006. The bankruptcy judge further did not abuse his discretion in finding that across the spectrum of cases in which Mr. Parker had appeared, he engaged in repeated and continuing contumacious misconduct that demonstrated a lack of competency in bankruptcy law. There also was sufficient evidence of bad faith on the part of Mr. Parker.

For the foregoing reasons, the bankruptcy court's Order denying Mr. Parker's motion to vacate, entered on June 2, 2011, and the Order entered on April 8, 2011, disbarring Mr. Parker from the practice of law in the United States Bankruptcy Court for the Middle District of Alabama, are AFFIRMED.

It is further ORDERED that Mr. Parker's request for oral argument is DENIED.

DONE this 26th day of January, 2012.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE